May I please the court, Harold Higgins, on behalf of James Paul Antonio. This appeal involved two cases tried separately, sentenced at the same time and consolidated for appeal. I'm just going to address the first of the two cases, which is your case number 10016, which involves a substantial 480-month sentence, which my client Mr. Antonio received, which involved six counts. I'm only going to talk about the first three counts, which involved an assault on one Karenina Ignacio. And just to make it clear, because there were several different female names, Ms. Ignacio was not related to Mr. Antonio, but she was at the time of this assault at the house of Mr. Antonio's estranged wife, which was Phyllis Antonio. And as the record makes clear, Mr. Antonio had had ongoing troubles of an apparently violent nature with Ms. Antonio. There were three issues raised in this that I want to discuss. One is a interrelated, which is a prior act testimony in the motion for mistrial. As to the search, the search in question occurred four days after the incident, and Mr. Antonio was at a third lady's house, a Sandra Francisco. Police had information that he was there. They went, they surrounded the house, they ordered everyone out. Eventually, Mr. Antonio came out with his hands raised. He was arrested, handcuffed, and totally secured before any of the search issues arose. Thereafter, the officers talked to Ms. Francisco, and she gave them consent to search the house, and she said, there's a gun in there. Not my gun. I don't want to have anything to do with the gun. Get rid of that gun. Officers went in and first determined that there were no, they did the protective sweep, no people inside. They then found this backpack that Ms. Francisco had identified. The first officer, and I think this is important to the issues, inside the house, looked inside the backpack, saw there was a gun inside, did not secure it, did nothing with it, came outside, put it on the hood, I believe, of a gun. Antonio raised several issues in regard to this seizure and search. First, let me ask you a question. What's my standard to review on this particular issue? I believe it's a, the court reviews it ab initio because of the... Well, we're applying the law ab initio, but as to the facts of the particular investigation and what happens, don't I give the court, the district court who is holding the hearing and going through the suppression, don't I review those for clear error? I believe that's true, and I think that... And in fact, so if I review those for clear error, I have to really get down to the fact that the district court made some factual findings, didn't they? Didn't it? And one of the factual findings was that the officer, she didn't want the backpack in the house. She did. She already knew the weapon was in the backpack. She did. They had a procedure for dealing with material that was given to them, and that procedure was discussed before the district court. Well... Was it not discussed before the district court? Didn't the officers talk about the procedure? If, if you want to say one question and answer, it's a discussion. That's where my argument is with the judge's findings. The court also found the standard police procedure was to remove a weapon at the request of the homeowner? Yes. And the court found that the search of the backpack was done in accordance with the procedure? Well, she found that it was an inventory search. Well, in accordance with the procedure outlined by the police department. Well, that's true, but if I may... And if, in fact, those are the district court's factual findings, what is clear error about it? Well, I think the clear error is that the judge's, the court's findings about the procedures for inventory, because she found, ultimately found, that this was, the court's finding was that this wasn't, that the basis for allowing the evidence was that this was a inevitable discovery inventory search, and I believe the only evidence about that is on page 38 of the motion to suppress testimony, which is, do you have to inventory bags or backpacks before you seize them? Answer, if we were taking a bag, then yes, prior to placing in evidence. Well, that's it, I don't think that that satisfies the requirements that this court and other courts have made that the police actions have been made pursuant to policies and procedures. I mean, that is a conclusory one question, and I think that's all there is. And so the rest of the, I guess the court, you would have to say the court is basing its knowledge about the procedures and policies that are involved on its general knowledge of those policies. So your real question here is then, not enough evidence to make that factual finding? Yes. And that on a clear error analysis? Well, I don't think, frankly, I don't think that's any evidence. That's a conclusory question and answer. Is that what you do? Yes. But isn't there additional testimony from Sergeant Hand about the TPD procedures and the requirement that they secure firearms before they transport them back to the station? Well, that's true. I think that is a separate policy and procedure from the inventory policy. And, of course, it's the inventory exception that the court uses to justify the search here. And, in fact, it's interesting that they talk about the security of the equipment. It's a securing issue, safety of the officers and whatever. However, first officer finds their gun, looks at it, and what does he do with it? And remember, at this point, defendant secured, no one else in the house at this point in time, so this gun that needs to be secured before they can do anything with it, he leaves it in its bag, he walks out and puts it on the car. I think that could be. Well, they eventually secure, they follow procedures in transporting in their vehicle. They do eventually do that, yes. Why isn't, you know, even if the court erred on the inventory search, why isn't that an adequate justification here that would overcome your motion to suppress? Well, I don't think they needed to do that, frankly. They had the gun. They had every opportunity. The officer, if it needed to be secured inside that house, should have secured it. They got it outside. They have every opportunity and ability. No executive authority, no one else in the house. In certain circumstances, at that point, preventing them from getting a warrant to search and secure the gun. That's our position. On the other issue is the testimony. Here you have, it again becomes important to keep the players separate here, because Mr. Antonio's wife, Phyllis Antonio, there was, the government proposed to use prior bad act testimony related to her, in which she would testify at the machine gun in question, which had been supposedly used for the assault against Miss Ignacio was Mr. Antonio's machine gun. And how did she know that? And how could she identify that? Because he had every other day. Counsel, you said that that was supposedly the gun that he used, but I thought that that was stipulated. I thought that was the whole point of all of this. Well, it was stipulated. And if you give me 30 seconds to run through, it was stipulated after the defense tried to get precluded the fact that it had been put in her mouth every other day for a period of time and threatened to blow her brains out during that period of time, which was totally superfluous and unnecessary. It isn't superfluous if the question is to whether that gun is the one that was used in the incident, because it goes to the basis as to how she knows and recognizes the gun. Well, if you're going to contest today that the gun is still allegedly the gun that was used, then it looks to me like you've put it all back into question. He, well, I guess. Are you disputing that the weapon that was produced was the one that was used in this incident? I'm not disputing that at all. What I am disputing is that there should not have been allowed testimony, and actually testimony never occurred, but there was argument, an opening statement by the government, about this gun being put in her mouth. That isn't something that's outside of an element, and therefore one could say wouldn't be probative at all. That is an element of the crime. So the judge says, because I've heard all this about probative and non-probative, and because I've determined that it is probative, at this point it's going to come in. Well, and I think that the court should have a balanced prejudice versus probative value here, and should have. I mean, certainly it could just as easily have been said, I saw that gun in his hands every other day for a week, every other day for I don't know how long, from close up, as opposed to, I don't know if it's easier to identify a gun when the barrel's sticking in your mouth, as supposedly the testimony was. She's not the victim here, and the second half of the question is a mistrial, because the government, in its opening statement, does not get up and say, two times they mentioned this testimony about the wife, not the victim, but the wife with the gun going in her mouth, and they never say, what they do say, this is a violent man, and look what he's done to his wife. Put that gun in her mouth every other day, and they never even say, oh, and that's how she knows this is the gun that was used in this incident. It was used totally for its prejudicial effect. Let's suppose that I agree with you that this was over the top, and that the evidence of the gun being in her mouth on a daily basis should not have been admitted. Yes. What's the prejudice to your client? As long as you're stipulating that the gun that was introduced is the one that he used in this incident, isn't the evidence against your client overwhelming? Well, I think not, and the reason is because the assault was against another lady, who happened to be present at the stranger's place. But she's got a bullet in her. I understand that. We're not really disputing whether she got shot by him on the station. The question was whether Mr. Antonio had the intent to shoot her. It was a question. And while there was some evidence of that, there'd be a whole lot more evidence he was trying to get his wife. As a matter of fact, the shots were sprayed, according to the testimony. And so we got a question of what beef does he have against this lady who got shot, and there's really no evidence of a beef against her. And then you jump from, well, what about that, to he's got this machine gun that he's putting in his wife's mouth all the time. This is a really bad guy. And I think you put the two together, and there's the prejudice, which fills in the blanks of why was he going after that lady. Why did he have the intent to shoot the lady that got shot? Counsel, it's true, though, that that testimony was never admitted into evidence, correct? It is true. And the prosecutor's opening statement, that's not considered evidence, correct? I understand that. So it really doesn't seem to me that this was really a 404B case at all, because the evidence really never came in. It was promised to come in through a motion limine, but isn't this case really about whether the court erred in granting the motion limine pretrial? Well, it is because if the court hadn't erred in that way, as we suggest, then the prosecutor wouldn't have been making his argument. But just as important, if not more so, is the denial of the motion for mistrial. Even though the testimony didn't come in twice, the prosecutor used this testimony not for the purpose that the court let it in, but just to inflame and impassion the jury about what a violent guy this was. Well, I'll spot you that, that we ought to be looking at the mistrial. But it seems to me that whether the court erred in the admissibility of the evidence really is not germane because the evidence never came in. Aren't you really contesting the fundamental fairness of the trial based on the inflammatory statements in the opening statement? Well, ultimately I am, although those would not have been made but for the court's initial ruling on that issue. And it did not, and the only reason it didn't come in at trial was because once defense counsel had heard the inflammatory nature of this and his motion for mistrial had been denied, they basically caved in on the, and stipulated, okay, that gun is ours. We're not going to contest that issue anymore. The time's up. Thank you, Mr. Higgins. Mr. Ferg. May it please the Court, my name is Bruce Ferg, Assistant United States Attorney on behalf of the government in this case. As Mr. Higgins has addressed, we have essentially two issues before you, one being the suppression question, and secondly the matter of the denial of the motion for the mistrial. Now, the standard of review here, I would submit, is in fact clear error because that, in fact, is what this Court specifically said in the Rookies case relying on Lange, that because this is a mixed question of law and fact, which is fact intensive, that that's the kind of case under Nix v. Williams which is addressed as a question of clear error. So that, I would submit, is the appropriate standard of review, though obviously we would submit that there is no error here at all, so the standard ultimately won't change the outcome. What we are talking about here, as really was outlined in the brief and has been discussed already with you, is that this was a situation where the police had standardized policies about what they would do in a case where they were taking someone into custody and there was a weapon present that needed to be dealt with, and they simply followed those policies. And I think it's important to point out that there was no laxity or inappropriate behavior here. The testimony actually shows that Officer Chamberlain carefully opened the backpack, recognized that what he was dealing with was in fact a machine gun, not something that even your line officer sees every day, and so he immediately picked it up without touching it or doing anything else except to carry the entire bag outside and handed it directly to his superior officer, Sergeant Hand, to make safe as was appropriate under their policies. So the fact that it wasn't done in the house as opposed to outside, where actually it was being removed from the presence of other people, suggests actually appropriate action rather than any kind of disregard of their SOPs. So what we really have, as the district court's findings were, is that this was inevitably discovered because they were following their own appropriate inventory procedures. With regard to the mistrial, this was in fact an evolving trial situation. Before the trial, everything was in play, including Felicia's credibility of being able to identify this particular weapon, which was a crucial link in the evidence because everyone else saw the results. They saw the spraying of the bullets. They found the casings outside. Did the court ever do a balancing of the prejudice against the probative value? Implicitly, yes. How about explicitly? Well, I guess I don't want to get into semantics, but she said, I always weigh prejudice as part of this discussion. So was there a kind of formalized, I'm looking at 403 and deciding that it's more probative than prejudicial, not in those terms? That testimony is devastating. I mean, when that comes in, you know, this case is over. Wouldn't you agree? Maybe I'm not following. Which testimony in particular? I want to be sure I'm answering your question. That he put a machine gun in her mouth every day and threatened to kill her. It is certainly not going to help him, but it also was extremely probative of the question that was at that time an issue, whether she could accurately identify the weapon. No, I'll spot you the relevance. But the question is, you know, we're a reviewing court that has to look at the factors that the court balanced that relevancy against the prejudice to the defendant, alternative ways of getting that evidence in, those sorts of things. And all we have is an implicit determination of prejudice. Well, when the judge says, I'm always weighing prejudice versus probative value, and in fact I pointed out in my brief, Sue Esponte actually made an explicit ruling about other evidence about whether it was more probative than prejudicial, excuse me, more prejudicial than probative and should it be brought in. Well, it seems later after opening statement, she makes another implicit finding that the evidence is prejudicial and disallows it, probably because of the impending stipulation. But that brings me to the, you know, to me, my problem with this case is, you know, the cows are out of the barn after the opening statement. This, you know, inflammatory evidence comes in. The prosecution, you know, has really rung the bell at that point. How does the defendant overcome that? Curative instruction is not going to do much. You know, he was forced to stipulate, but, you know, the jury was left from the opening of the trial with that impression. Well, that's why I emphasize the evolving nature of what happened here, because she did make, the district court did make this initial ruling on the basis of a motion in limine saying, yes, I understand this is somewhat prejudicial, but because of the credibility issue that was still in play at that point, it was, she found it was appropriate for the government to be able to address this. As far as the actual statements that were made in the opening statement, yes, the word violence was used, but it was in the next, first proceeding sentence immediately followed by, and how was this demonstrated by the fact that he had this machine gun that he put in her mouth every other day for the, and he specifically referenced the time that they were married, which was, in fact, only about three weeks. So it's not like a lifetime of abuse. He's specifically saying the violence that we're talking about is this particular act, which was, in fact, probative and relevant to what was then an issue. What weight should we put on the fact that it was never admitted into evidence, that it was only the prosecutor's promise of evidence? Well, it's a factor that the Ninth Circuit has recognized as cutting against prejudicial effect, because there are cases that I've cited which point out that when a party offers evidence in an opening statement and isn't able to produce it, the jury is likely to kind of look askance at that party and say, well, how much can we rely on that party? And, again, it's important to recognize that the judge found that it was sufficiently prejudicial to exclude after the strategic decision by the defense that they were not going to put Felicia's credibility about the gun in issue. But the defense did move for a mistrial. I mean, they didn't sit on it. They jumped up after opening statement and moved for a mistrial. Yes, and the judge basically denied it because it was the issue that had been thrashed out in the ---- At that point, the evidence was still probably going to come in, correct? At that point, yes, because they were still, in effect, having in play the question of Felicia's credibility in identifying the weapon. And she was the only one who was able to make that link between the defendant and the gun and, therefore, to, in effect, point to him as the guilty party. So this was a crucial element of the prosecution case. When the court heard the pretrial motion to admit the evidence, did the defendant at that time object because of a 403 analysis? No, sir. I don't believe that he did. So they didn't? Well, again, it's, in a sense, implicit. The pretrial motion discussed not only this particular incident but other incidents of domestic violence, if you will. And it was agreed among the parties that that was not something that should appropriately come in, but the only specific ruling that, therefore, was necessary was about the question of putting the gun in the mouth, which the prosecution argued and the court agreed was probative, although prejudicial, because of its bearing on that fundamental issue. Well, I thought, based on the argument that took place at that time, one could not really say they did not object on a 403 analysis, but then I read in your brief where that's kind of what you were suggesting. Yeah. Well, this court has indicated it's important to make specific, to specifically articulate your objections so the court knows exactly what's going on. But, again, regardless of whether that was sufficiently explicit, it's clear from the record taken as a whole that, as she herself said, the district court was constantly weighing probative value versus prejudice. And the prejudicial effect of this statement was overcome by the, I think, I listed about five different factors in the answering brief. First of all, the fact that the evidence itself was not actually admitted, so the additional prejudice, if you will, did not accrue. There were the general instructions, which this court has found goes far to remove prejudice from even actual admission, inappropriate admission of prejudicial 404B types of evidence. Thirdly, not once, not twice, but three different times during the course of the trial and all these discussions, the district court offered to give more specific curative instructions if the defense wanted them and they declined. So when they have the opportunity to further ameliorate any prejudice that they think that they have, this court doesn't reverse for things that they could have done for themselves. And, ultimately, quite aside from that statement, at the end of the case, when we're looking at it now, the evidence was overwhelming. And not only just about the gun, but, in fact, his intent, which actually seems to be Mr. Higgins' primary defense, or what was ultimately argued, because we have the phone calls that the defendant made to his wife, Felicia, afterwards, in which he essentially admitted, yeah, I intended to shoot her because I thought she was the one that was banging back on the door when I was banging on the outside, when it was actually the children. He saw Kay, the lady victim, as basically harboring Felicia when he wanted her to come out. And so, yeah, he had a motive. He was mad at everybody, particularly anyone who would take up his wife's part. So, yes, there was intent. The evidence shows that he had peered directly into the glass of the windows to exclude the reflection and saw inside, stepped back, got his gun, and sprayed the house. And at that point, Kay was the only person standing up because she was working in the kitchen and then approached the window to insert a DVD into the TV setup. All the other people were out of sight, sitting down on couches. So, yes, there was overwhelming evidence. But that only comes to the ultimate question of prejudice. And I would suggest that if we really apply the abuse of discretion standard, which is what it is for the denial of a mistrial, you don't have either a misstatement of material fact by the district court, nor a clear error of law, nor any rational decision, which is the way the abuse of discretion standard has been described. And so, ultimately, this was a situation where the situation arose because of the defendant's decision that he was going to go ahead and initially to controvert this issue of Felicia's credibility in identifying the gun, and then he changed his mind. But as the prosecutor pointed out, well, if he was going to end up stipulating, you know, we could have done that beforehand, and there had never been any need to mention it. They stipulated a bunch of other things. But tactically, the defense, at least initially, wanted to controvert it. So isn't it correct the prosecutor also used the machine gun evidence to attack Mr. Antonio's character? He stated in an opening statement that it showed that he was a violent person. That's not a proper use under 404B of the evidence, is it? I don't think that, if read in context, I don't think that it was meant or appropriately perceived as a general attack on his character. What he, the prosecutor, actually said is he has been violent in that he did this with his wife on these occasions while they were married. And so it's not a general attack on his character. None of the other characteristics. Sounds like he's saying he's a violent character. He is violent to his wife in this way, which allowed her to see the gun, which is crucial to this case. So, yes, there certainly is a degree of prejudice. But at the point that the admissibility decision was made, it was something where the probative value of that evidence was critical. Thank you, counsel. Mr. Higgins. As the Court required as to whether defense counsel had raised this balancing issue, and he didn't use those words, but at page 18 of that status conference he did say, I think there's an easier way to do it. Just show her the machine gun and ask if she recognizes it. The fact that it was in her mouth doesn't particularly help the identification process. And that certainly is a request to sanitize from that really egregious testimony the bad stuff and just leave in what's supposedly important, which is the fact he had that gun a lot. I can identify it because he always had it in his hands. Thank you. Thank you, counsel. Thank both counsel for the argument. United States v. Antonio is submitted.
judges: Tymkovich, Bybee, Smith N. R.